Timothy **WILSON**, a Minor, by Robert Wilson, His Natural Parent and Guardian, and Robert Wilson, in His Own Right

v.

**AMERICAN CHAIN & CABLE COMPANY, Inc.**

v.

Robert **WILSON** and Hugh Lavery (Third-Party Defendant)

Timothy Wilson, a Minor, by Robert Wilson, His Natural Parent and Guardian, Appellant.

Timothy **WILSON**, a Minor, by Robert Wilson, His Natural Parent and Guardian, and Robert Wilson, in His Own Right

v.

**AMERICAN CHAIN & CABLE COMPANY, Inc.**

v.

Robert **WILSON** and Hugh Lavery (Third-Party Defendant)

Robert Wilson, in His Own Right, Appellant.

Nos. 15450, 15458.

United States Court of Appeals Third Circuit.

Argued Jan. 7, 1966.

Decided Aug. 3, 1966.

See also, D.C., 38 F.R.D. 72; D.C., 216 F.Supp. 32.

Sidney J. Smolinsky, Phildelphia, Pa., for appellant in No. 15450.

Robert W. Costigan, Philadelphia, Pa., for appellant in No. 15458.

William J. McKinley, Jr., Swartz, Campbell & Detweiler, Philadelphia, Pa., for appellee in both appeals.

## OPINION OF THE COURT

Before BIGGS, GANEY and FREED-MAN, Circuit Judges.

FREEDMAN, Circuit Judge.

This is a diversity case arising under the law of Pennsylvania. Robert Wilson, the father of five year old Timothy Wilson, as guardian of the minor and on his own behalf brought this action against the defendant for negligence and wanton negligence in the design of its Lawndale riding rotary power lawn mower. The negligence alleged was that although it knew that rotary power mowers were dangerous and that injuries resulted from their use, defendant had failed to incorporate brakes, or a declutching device and to properly position and guard the discharge openings, all because of considerations of cost, aesthetics and space. As a result of the absence of a clutching device it was necessary to turn off the engine motor to bring the blade to rest. The defendant denied that it was negligent. As to the claim of the minor it also raised the defense of a superseding cause and as to the father's claim alleged that he was contributorily negligent and that the required jurisdictional amount was lacking.

The plaintiffs' version of the circumstances of the accident was given by the father. He testified that on August 3,

1959, while it was daylight, at about 6:30 P.M., Daylight Saving Time, he was mowing the lawn of his home in Springhouse, Pennsylvania, where he lived with his wife and five young children. He was using the defendant's power mower, which he had recently purchased on a trial basis. He had just finished supper and had left his wife and children in the house, assuming that the children would watch television as they usually did after supper. A little while after he had begun mowing the lawn, Wilson noticed his twenty-two month old daughter, Linda, running toward him. He placed the clutch in neutral, which stopped the forward motion of the mower but left the engine running and the mower blade rotating, and went to his daughter. He picked her up and put her in a swing some distance away. As he was fastening her in the swing, he heard a change in the sound from the lawn mower, and as he turned to look, saw Timothy seated on the mower. It was moving forward up an incline on the lawn. He froze for a moment, and then ran toward Timothy, but before he could reach him, Timothy fell over the side of the mower and its blade cut off the heel and achilles tendon of his right foot.

At the conclusion of plaintiffs' evidence, the trial judge granted defendant's motion to dismiss the father's claim for lack of jurisdiction because the amount in controversy could not exceed $10,000 and also on the merits because he was guilty of contributory negligence as a matter of law. The minor's case went forward, and after defendant presented its evidence the trial judge submitted to the jury the question of the defendant's negligence and on the claim for punitive damages submitted the question of defendant's wanton negligence.[1] The jury returned a verdict in favor of the defendant and the subsequent motions for new trial and judgment N.O.V. by the minor and for new trial by the father were denied.

Two questions are presented to us on plaintiffs' appeals: (1) the charge of the court on the question of superseding cause; and (2) the dismissal of the father's claim because of (a) contributory negligence; and (b) the lack of diversity jurisdictional amount.

## I.

### The Minor's Case

In the minor's case, the jury was required first to decide whether the defendant was negligent in failing to build a machine safe for ordinary, foreseeable circumstances, and if so, whether the intervening conduct of the father was a "superseding" cause excusing it from liability. The trial judge correctly charged the jury on negligence and then defined superseding cause as existing where the intervening act is "so predominant that regardless of what the other person did, it is immaterial." Again, in describing the difference between superseding and concurring negligence the trial judge told the jury: "Now, if you come to the conclusion that both parties were negligent here, then you would have [to] come to another conclusion in rendering a just verdict by saying, 'Well, they were equally responsible or the negligence of one was so predominant, so superseded the negligence of the other, that it made it immaterial.'" Later the trial judge said: " * * * [W]as this accident caused because of the negligent design of this machine? Secondly, if you should conclude that the machine was negligently designed, is that what caused the accident to the boy? Third, if you conclude that the company was negligent in designing this, then you must go to the second case and decide what was the primary cause, or what was the cause. Was it the negli-

---

1. The trial judge granted the motion for a directed verdict in favor of the third-party defendant, Hugh Lavery, a mechanic who had made some minor adjustments to the mower. No appeal was taken from this action. The defendant had also joined Robert Wilson, the father of the minor, as a third-party defendant, but in view of the verdict in favor of the defendant as to the minor plaintiff's suit, no finding was made as between the defendant and the third-party defendant, Wilson.

gence of the father, assuming there was negligence? * * * If you find the father was not negligent and they were negligent, well, that is the end of it. If you find that they are both negligent, then you must find whether it was a concurrent act of both parties or whether one superseded the other and therefore that was the actual proximate cause of this injury."

There can be no doubt from these statements that in determining whether it should hold the defendant liable the jury was guided by a direction which in effect told them that even if the defendant was negligent it was not liable if the father was negligent and his negligence was subsequent to and greater in extent or predominated over the negligence of the defendant. The charge therefore was erroneous under Pennsylvania law for two reasons. In the first place, it failed to tell the jury that in order to be a superseding cause it is not enough that a later act is a predominant cause but that it must be so highly extraordinary as not to have been reasonably foreseeable.[2] Secondly, the charge gave no indication that whether the intervening act was foreseeable is to be determined retrospectively and not prospectively.[3] These principles have been followed by this Court in Leposki v. Railway Express Agency, Inc., 297 F.2d 849 (3 Cir. 1962), a Pennsylvania diversity case, like this. There the defendant parked its truck facing up a steep hill with a high crown, as a result of which gasoline leaked out of the opening of the gasoline tank into the gutter. A boy who was passing by threw a match into the gutter, igniting the gasoline. The ensuing fire reached the plaintiffs' home where it caused property damage and personal injury to two infant children who were asleep inside. The defendant contended that any negligence on

its part was superseded by the boy's act of throwing the lighted match into the gasoline. The trial court instructed the jury: "Should the defendant be excused from liability to the plaintiffs by the intervening act of the boy in igniting the gasoline as he did? Could the defendant reasonably foresee that this might happen? * * * If you decide that it could, you may find for the plaintiffs. If it could not have been anticipated or foreseen, your verdict should be for the defendant."

We reversed, saying: "In Pennsylvania, an intervening negligent act by a third person does not, in all cases, constitute a superseding cause relieving an antecedent wrongdoer from liability for negligently creating a dangerous condition. The act is superseding only if it was so extraordinary as not to have been reasonably foreseeable. * * * The extraordinary nature of the intervening act is, however, determined by looking back from the harm or injury and tracing the sequence of events by which it was produced, * * * i. e., the events are viewed retrospectively and not prospectively. * * *

"The district court's charge, viewed by this standard, was clearly misleading. Whether an intervening act constitutes a superseding cause is a question that is more readily resolved in hindsight, and that which appears to be extraordinary in the abstract may prove to be otherwise when considered in light of surrounding circumstances that existed at the time of the accident. It may be that a particular defendant is unaware of the facts that led to events giving rise to the intervening act, yet the jury, viewing the matter retrospectively, could properly conclude that the act was not extraordinary. * * * Considering the intervening act in light of the circumstances that prevailed at the time defendant parked the truck, can it

2. Doyle v. South Pittsburg Water Co., 414 Pa. 199, 202–205, 199 A.2d 875 (1964); Shimer v. Bangor Gas Co., 410 Pa. 92, 97–100, 188 A.2d 734 (1963); see also Restatement, Second, Torts § 447; Comment, Proximate Cause and the Pennsylvania Supreme Court: Twenty-Five Years In Review, 9 Villa.L.Rev. 453, 460–463 (1964).

3. Skoda v. West Penn Power Co., 411 Pa. 323, 331, 191 A.2d 822 (1963); see also Restatement, Second, Torts § 435(2); 442; 440, comment b.

be said that the boy's act was extraordinary? That is how the jury should have been instructed to view the question." (850–851).

The trial judge therefore should have defined superseding cause and distinguished it from concurring cause by isolating the critical element, whether the act was so extraordinary as not to have been reasonably foreseeable, and should have instructed the jury that whether the act was reasonably foreseeable was to be determined by following retrospectively the sequence of events and looking back from the harm to the negligent act rather than by considering whether the defendant should prospectively have envisaged the events which unfolded and caused the accident.

These errors in the charge are so fundamental that we must notice them on appeal, despite the plaintiff's failure to object at the time as required by Rule 51. See Leposki v. Railway Express Agency, Inc., supra; McNello v. John B. Kelly, Inc., 283 F.2d 96, 102–103 (3 Cir. 1960). In Leposki (297 F.2d 850 n. 1), we indicated that the failure of the trial judge to point out the requirement that superseding cause is to be viewed retrospectively rather than prospectively was fundamental error. In the present case, more is involved than the single error which we there found fundamental. Here, in addition, the court failed to instruct the jury adequately on the distinction between superseding and intervening cause. The jury therefore was without adequate guidance on the fundamental question whether defendant should be absolved from liability for negligence by the intervening action of the father. A verdict so arrived at is one ungoverned by the legal principles which determine the dispute between the parties and therefore may not be sustained as the ultimate product of the judicial process.

The judgment in favor of the defendant on the claim by the minor plaintiff through his natural parent and guardian therefore will be reversed and the cause remanded for a new trial.

## II.

### The Father's Claim

A. *Contributory Negligence.* In the claim of the minor plaintiff the trial judge submitted to the jury the question whether defendant was wantonly negligent as well as its ordinary negligence. But the father's claim was held to be barred because he was contributorily negligent as a matter of law.

It is settled in Pennsylvania that a plaintiff who is guilty of contributory negligence, however slight it may be, is barred from recovery against a negligent defendant. Crane v. Neal, 389 Pa. 329, 132 A.2d 675 (1957). An exception exists however, in cases where the negligence of the defendant is so gross as to amount to wanton negligence; in such a case contributory negligence of the plaintiff is not a bar. Kasanovich v. George, 348 Pa. 199, 34 A.2d 523 (1943); Tanner v. Pennsylvania Truck Lines, Inc., 363 Pa. 136, 69 A.2d 366 (1949); Restatement, Second, Torts § 482(1). If the evidence required the question of wanton negligence to be submitted to the jury in the minor's claim, it was equally available to the father in his claim. The father's claim therefore should have been submitted to the jury with instructions that if it found that the defendant was wantonly negligent, his claim would not be barred by contributory negligence on his part. For this reason alone the trial court erred in granting the motion to dismiss the father's claim.

Even if no wanton negligence on the part of the defendant was shown, the question whether the father was guilty of contributory negligence should have been submitted to the jury and not determined against him as a matter of law. The modern rule in Pennsylvania is now well settled that the question of contributory negligence ordinarily is for the jury and will be declared as a matter of law only where it is so clear that there is no room for fair and reasonable disagreement as to its existence. Weidemoyer v. Swartz, 407 Pa. 282, 285, 180 A.2d 19 (1962). The circumstances must be viewed as the

father reasonably believed them to exist, and elements which were not in his mind and which he could not reasonably have anticipated may not be permitted to impose a burden on him beyond the standard of due care. The reasonableness of his belief that all of the children were in the house and of his conduct in hurriedly leaving the mower as he did to put his twenty-two month old daughter in a place of safety, are all relevant in determining from the existing circumstances whether his conduct fell below the requirement of ordinary care. The jury's attention therefore should have been focused on all the circumstances and it should have been instructed to determine from them whether they created a sudden emergency for which the father was not responsible and in the light of which he exercised ordinary care.[4]

The question of the father's contributory negligence, even if defendant had been found guilty only of negligence and not of wanton negligence, was a matter for the jury.

**B.** *Amount in Controversy.* The trial judge also held that the father's claim must be dismissed because it did not satisfy the jurisdictional requirement that the amount in controversy must exceed $10,000. 28 U.S.C. § 1332(a).

The testimony showed that the father's expenses for the treatment of the son's injuries amounted to approximately $1,500 and that the boy will be required to have special orthopedic shoes which will cost $33 annually until he reaches the age of twenty-one years or is emancipated.[5] A physician gave his expert opinion that the boy's condition will grow worse and will progressively restrict his activities. There was, however, no evidence regarding what loss of future earnings the father may sustain during the son's minority, nor as to the cost of possible future medical or hospital care, although the evidence indicates that future medical attention will be necessary. Future loss of earnings of a child who is very young at the time of trial contains a large element of speculation which is excused out of necessity. But in the present case no real effort was made to supply the jury with any elements regarding the minor's personal qualities which, however fragmentary, might have afforded some basis for determining his likely means of employment and earning power. Nor was any effort made to put into some concrete form the possible liability of the father for future medical or hospital care. In these circumstances, therefore, there was not enough to close the gap between the $2,000 proven loss and the $10,000 jurisdictional amount.

But whether a trial ultimately reveals the lack of proof of damages equal to the amount of the statutory requirement is not the test of jurisdiction.[6] We recently had occasion to say that the standard by which the amount in controversy is to be judged is the subjective belief entertained in good faith at the time the allegation of damages is made, and since objective proof is evidence of subjective belief, a showing to a legal certainty that the claim is below the jurisdictional amount affords evidence of lack of subjective good faith. See Jaconski v. Avisun, 359 F.2d 931 (3 Cir. 1966); Brough v. Strathmann Supply Co., 358 F.2d 374, 377 (3 Cir. 1966). In the present case, however, the judge did not undertake to make a determination of good faith, nor did he submit the question to the jury for its decision. Instead, he determined the jurisdictional question by measuring whether the proofs would justify a verdict in the jurisdictional amount.

---

4. Sowizral v. Hughes, 333 F.2d 829, 835–836 (3 Cir. 1964); Klink v. Harrison, 332 F.2d 219, 225 (3 Cir. 1964); Richardson v. Pennsylvania R.R., 338 Pa. 155, 158–159, 12 A.2d 583 (1940).

5. As to the effect of emancipation, compare Brough v. Strathmann Supply Co., 358 F.2d 374, 378 (3 Cir. 1966).

6. Stewart v. Shanahan, 277 F.2d 233, 236–237 (8 Cir. 1960); Minsky's Follies of Florida v. Sennes, 206 F.2d 1, 4 (5 Cir. 1953).

The determination of lack of jurisdictional amount therefore was made by the application of an erroneous standard and must be set aside.

There is, moreover, a more fundamental error in the dismissal of the father's claim for lack of jurisdiction, although it was not raised below or here. The father's claim is not independent from the claim which he made on behalf of his minor son, for the father's damages flowed to him from the injury which the son suffered and are ancillary to the son's claim. In cases of this kind where parent and child or husband and wife are claimants, Pennsylvania statutes for many years have required that the "two rights of action shall be redressed in only one suit, brought in the names of the parent and child [or the husband and wife]." [7] These statutory requirements have been continued under the rule-making power in the Pennsylvania Rules of Civil Procedure. [8]

In these circumstances it seems to us both appropriate and right to apply the doctrine of pendent jurisdiction, by which a claim cognizable in the federal courts may be permitted to carry with it a related claim otherwise not within the federal jurisdiction, if both claims ordinarily would be tried in one judicial proceeding. The basis for this doctrine is the judicial economy, and the convenience and fairness to litigants which it serves. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 724–727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Hurn v.

Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); cf. Clark v. Paul Gray, Inc., 306 U.S. 583, 588–590, 59 S.Ct. 744, 83 L.Ed. 1001 (1939).

The usual case of pendent jurisdiction involves one plaintiff. Although the present case involves two plaintiffs, one the minor and the other the father in his own right, both these claims arise from the same occurrence. This unity is recognized and reinforced by the Pennsylvania requirement that they must be redressed in one action. We give recognition to this policy of Pennsylvania in treating the father's claim as pendent to that of the minor. Indeed the father is the party plaintiff in both claims. We have already recognized the principle where diversity of citizenship existed in a survival action by permitting an accompanying wrongful death action, in which diversity of citizenship was lacking, to be maintained as pendent to it. [9] It is equally applicable to cases such as this where the diversity requirement of the amount in controversy is present in one but absent in the other of the two related claims of parent and child. [10] The cases which have refused to aggregate the amounts in controversy in two similar actions [11] are not here applicable. Nor do we consider persuasive those cases where the application of pendent jurisdiction was not considered, although it might have been applied. [12] Clark v. Paul Gray, Inc., 306 U.S. 583, 588–590, 59 S.Ct. 744 (1939), to whatever extent it has survived United Mine Workers of America v. Gibbs, 383

7. Act of May 12, 1897, P.L. 62, § 1, 12 Purdon's Pa.Stat.Annot. § 1625, relating to parent and child; Act of May 8, 1895, P.L. 54, § 1, 12 Purdon's Pa.Stat.Annot. § 1621, relating to husband and wife.

8. Rule 2228, 12 P.S.Appendix. The statutes were suspended by Rule 2250.

9. Borror v. Sharon Steel Company, 327 F.2d 165, 172–174 (3 Cir. 1964); see also Yuba Consolidated Gold Fields v. Kilkeary, 206 F.2d 884, 890–891 (9 Cir. 1953).

10. See the able opinion of Kirkpatrick, D. J., in Morris v. Gimbel Brothers, Inc., 246 F.Supp. 984 (E.D.Pa.1965); Raybould v. Mancini-Fattore Company, 186 F.Supp. 235 (E.D.Mich.1960). See contra: Sobel

v. National Fruit Product Co., 213 F. Supp. 564 (E.D.Pa.1962); Hamilton v. Civillico, 34 F.R.D. 1 (E.D.Pa.1963).

11. E. g., Payne v. State Farm Mutual Automobile Ins. Co., 266 F.2d 63 (5 Cir. 1959); Del Sesto v. Trans World Airlines, 201 F.Supp. 879 (D.R.I.1962).

12. Compagnie Nationale Air France v. Castano, 358 F.2d 203, 207–208 (1 Cir. 1966); Arnold v. Troccoli, 344 F.2d 842, 843, n. 1 (2 Cir. 1965); Hackner v. Guaranty Trust Co. of N. Y., 117 F.2d 95 (2 Cir. 1941), cert. denied, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520; Kataoka v. May Dep't Stores Co., 115 F.2d 521 (9 Cir. 1940), cert. denied, 312 U.S. 700, 61 S.Ct. 739, 85 L.Ed. 1134 (1941).

U.S. 715, 86 S.Ct. 1130 (1966), does not control the present case because there the individual plaintiffs were unrelated except in their effort to invalidate the statute assailed, whereas here the claim of the father flows secondarily from the injury to the son and because of this state law has created a unity of action.

The dismissal of the father's claim on the ground of either lack of jurisdictional amount or contributory negligence as a matter of law therefore must be set aside.

In both appeals, therefore, the judgments will be reversed and a new trial awarded.